## MORGAN v. UNITED STATES.
### No. 11142.

Circuit Court of Appeals, Fifth Circuit.
May 11, 1945.

Rehearing Denied June 7, 1945.

S. W. Plauche, Sr., of Lake Charles, La., for appellant.

Malcolm E. Lafargue, U. S. Atty., and Albert E. Bryson, Asst. U. S. Atty., both of Shreveport, La., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellant, Samuel R. Morgan, was convicted along with two others, Riley Johnson and John D. Warner,[1] under a bill of information charging defendants with selling ice in Lake Charles, Louisiana, during the period from May 25 to July 7, 1944, at prices higher than the maximum established therefor by maximum price regulation No. 154, promulgated pursuant to the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 901 et seq., by the Office of Price Administration. The ceiling price was thus fixed at the highest price at which the seller sold and delivered ice during the month of March, 1942.[2] The bill of information contained fifty-four

---

[1] A fourth defendant was acquitted on a directed verdict.

[2] Provisions of maximum price regulation No. 154 pertinent here are the following:

"Sec. 1393.1 Maximum prices for ice. On and after May 25, 1942, regardless of any contract, agreement, lease or other obligation, no person shall sell or deliver ice in the course of trade or business at prices higher than the maximum prices set forth in Appendix A hereof, incorporated herein as Sec. 1393.9; and no person shall agree, offer, solicit, or attempt to do any of the foregoing.

  ＊    ＊    ＊    ＊    ＊    ＊

"Sec. 1393.9 Appendix A: Maximum prices for ice—(a) Determination of maximum prices—(1) Generally: The seller's maximum delivered price and the seller's

counts, (appellant was convicted on fifty-two of them), each setting forth a specific sale made in violation of the price regulation; and all counts were identical except in respect to the date, purchaser, amount, and price charged.

Appellant was sentenced to six months imprisonment on the first five counts, and imposition of sentence was suspended on the remaining counts. From the sentence thus imposed he prosecutes this appeal. Here he asks reversal on the grounds that the bill of information did not admit of proof that there was a conspiracy, certain evidence was improperly admitted, and the evidence was insufficient to justify submitting the case to the jury.

In March and May of 1942, the Pure Ice & Cold Storage, Inc., and the Service Ice Company were the only dealers in ice in Lake Charles, Louisiana. In June of 1942 each filed with the local War Price and Rationing Board a price list showing the ceiling prices charged for ice during March of 1942. Under maximum price regulation No. 154, the price lists thus filed (they were identical) fixed the ceiling prices that could be charged for ice by these companies and by any seller of ice in that territory who began the business of selling ice after March of 1942. See paragraph (b), Section 1393.9, set out in footnote 2.

The capital stock of Pure Ice & Cold Storage, Inc., was virtually wholly owned by appellant's wife, and appellant was in active charge of its affairs during the summer and fall of 1943. During 1943 it was enjoined, in proceedings filed against it by the Price Administrator, from selling ice in violation of the maximum price regulation. In December of that year its affairs were placed under the management of Riley Johnson, one of the defendants, who until that date had served it in the capacity of accountant. Appellant, in the latter half of December, 1943, took personal charge of the affairs of the Morgan Ice Company, a Texas corporation that owned some ten manufacturing units located at various points in Texas, with headquarters in Beaumont, Texas, and the shares of stock of which were held by the members of his family.

John D. Warner, named as co-defendant with appellant and Johnson, was in the employ of Morgan Ice Company until the late spring of 1944 at one of its units in Longview, Texas. On or about May 25, 1944, he went to Lake Charles and under the trade name "Peoples Ice Company" opened a retail ice business near the Lake Charles plant of the Pure Ice & Cold Storage, Inc. Thereafter the Pure Ice & Cold Storage, Inc., cut off all sales of ice except to large customers and delivered its surplus ice to Warner, referring its retail customers to Warner for ice requirements. It was conclusively established that Warner disposed of the ice thus received at a price in excess of the ceiling.

The Government contended that appellant actually controlled the affairs of the Pure Ice & Cold Storage, Inc., as he did those of Morgan Ice Company; that Johnson was an employee of the former company and that Warner was an employee of the latter company; that Warner was brought to Lake Charles by appellant and set up in business as the Peoples Ice Company merely as a front for the Pure Ice & Cold Storage, Inc., in order that the latter company might sell ice in excess of the prices fixed by the maximum price regulation; and that this procedure was resorted to by appellant in order to get around the injunction against the Pure Ice & Cold Storage, Inc., obtained by the Price Administrator during the year 1943. Defendants, including the appellant, on the other hand asserted that Warner was solely interested in the business carried on by him and that he obtained ice from the Pure Ice & Cold Storage, Inc., under an oral contract with Johnson, its manager, pursuant to which all surplus ice of that company was sold to him.

After Warner began selling and retailing Ice under the trade name "Peoples Ice Company," Johnson on several occasions referred customers of the Pure Ice & Cold Storage, Inc., to appellant in connection with commitments for the sale of ice.

maximum platform price for any form, quantity, and quality of ice shall be the highest price at which the seller delivered such form and quantity and quality of ice during March 1942 on a delivered sale or on a platform sale respectively to a purchaser of the same general class.

\* \* \* \* \* \*

"(b) If the maximum price of ice cannot be determined under paragraph (a) of this section, the maximum price of ice shall be the maximum price of the most closely competitive seller of the same class, for the same form, quantity, and quality of ice."

These persons visited appellant in his office in Beaumont, Texas. One of them was introduced to Warner by appellant in appellant's office in Beaumont, and Warner there arranged to sell him ice at prices above the ceiling. Another of them testified that appellant told him in Beaumont that due to conditions, "the rate of pay he had to pay men, he couldn't afford to sell ice for 25 cents"; that the price would be 35 cents per c. w. t.; that he (the witness) there made a deal with appellant, and that appellant wrote out the deal to Johnson.

Appellant urges that, in the absence of allegation of conspiracy or other similar arrangement by appellant and the other defendants in the bill of information, the lower court erred in permitting the Government to introduce evidence respecting sales of ice by Warner, and of circumstances referring thereto or connected therewith, to show violations by the appellant of the maximum price regulation. Appellant argues that there was no way for him, by a reading of the bill of information,[3] to have determined the kind of scheme or plan upon which the Government would rely in prosecuting him, that he did not have, therefore, a reasonable opportunity to prepare his defense.

■ While the evidence introduced in the trial would have been competent to prove conspiracy, we think, as did the court below, that it was also competent to establish that Johnson and Warner were merely employees or agents of appellant or of corporations controlled by him, and that their acts were for and in his behalf. It is a well recognized principle that the act of an agent with the knowledge and consent of the principal is the act of the principal.[4] We find no merit in the argument that the bill of information did not inform appellant of the nature of the case against him, hence he was not given a reasonable opportunity to prepare his defense. No bill of particulars was requested, much evidence was introduced by appellant contrary to and in rebuttal of that of the Government, and appellant makes no contention here that he was deprived of evidence otherwise available to him because the bill of information failed to apprise him of the nature of the Government's case. The court below made no error in admitting the evidence.

■ To prove the ceiling prices fixed for the sale of ice in Lake Charles in 1944, a memorandum taken from the files of the local War Price and Rationing Board by a clerk of the Board was offered in evidence. The objection was made that the memorandum was not admissible for that purpose because it failed to contain on its face evidence to show that it was filed by the Pure Ice & Cold Storage, Inc., or that the maximum prices shown thereon were the prices charged by it for ice during March of 1942, and the clerk could not testify of her own knowledge that the Pure Ice & Cold Storage, Inc., filed the memorandum for that purpose. There was evidence that Johnson, manager of the Pure Ice & Cold Storage, Inc., informed an investigator of the Office of Price Administration that that company had filed such a list with the local Board, and the memorandum offered in evidence, across the top had written:

Pure Ice & Cold Storage, Inc.,
Lake Charles, Louisiana
June 23, 1942.

Maximum Price List of Cost-of-Living Commodities

| Name of Commodity | Identification of Sales | Maximum Price |
|---|---|---|
| Ice | F. O. B. Plant Platforms | |

Then followed data regarding the use to be made, amount and price per c. w. t.

---

[3] The counts in the bill of information, except as respects date, purchaser, amount, and price, are identical. The language in Count 1 is common to all with the exceptions noted and is as follows:

"That on or about May 25, 1944, Samuel R. Morgan, Riley Johnson, John D. Warner and Raymond H. Burtz, hereinafter referred to as defendants, at Lake Charles, Louisiana, in the Western District of Louisiana, Lake Charles Division, and within the jurisdiction of this Court, did then and there knowingly, willfully and unlawfully sell and cause to be sold, as a wholesaler, to one D. C. Lykins, a retailer of Iowa, Louisiana, 4,800 pounds of ice f. o. b. platform at a price of 35 cents per 100 pounds and did receive from said D. C. Lykins, for the said 4.800 pounds of ice the sum of $16.80, which price was far in excess of the maximum price; that the said defendants then and there well knew that the ice sold as aforesaid was sold at a price in excess of and higher than the maximum price established by Maximum Price Regulation No. 154."

[4] 18 U.S.C.A. § 550.

The evidence further showed that this memorandum was taken from a file of the local War Price and Rationing Board in which was kept the ceiling price lists filed by the various sellers, in compliance with the maximum price regulation, covering sales made by them during March of 1942; and that it was the only memorandum in the office of the said Board containing the name "Pure Ice & Cold Storage, Inc.," with a price list of maximum prices charged for ice. It bore a date less than a month after maximum price regulation No. 154 was promulgated. We think the evidence sufficiently established the identity of the price list and its authenticity, and the court below was correct in overruling the objection thereto. Cf. Johnson v. United States, 6 Cir., 89 F.2d 913; Metropolitan Life Insurance Co. v. Armstrong, 8 Cir., 85 F.2d 187; Lewis v. United States, 9 Cir., 38 F.2d 406.

■ The evidence heretofore discussed clearly was sufficient to justify submitting the case to the jury. The motion for a directed verdict was properly denied.

The judgment appealed from is affirmed.