**UNITED STATES v. BENT et al.**

No. 13906.

United States Court of Appeals
Eighth Circuit.

June 20, 1949.

Rehearing Denied July 14, 1949.

---

Harry F. Murphy, Assistant United States Attorney, Kansas City, Mo., for appellant.

John J. McFadden, Kansas City, Mo. (Ennis & McFadden, Kansas City, Mo., were with him on the brief), for appellees.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The District Court, on December 3, 1948, upon the motion of Joseph F. Bent for the correction of a sentence imposed upon him July 10, 1946, for robbing a custodian of government funds, entered an order vacating that sentence and the sentence of Bent's codefendant William Amos Jones. The court concluded that the second count of the indictment, upon which the defendants (appellees) had been sentenced to imprisonment for 25 years, stated no federal offense and would not support the sentence imposed. Concurrent sentences imposed under other counts of the indictment had expired. The government has appealed. It asserts, in effect, that the second count of the indictment, when read in connection with the other counts, is not so defective as to warrant the vacation of the sentences, on a motion made more than two years after the defendants were convicted.

According to the indictment, which contained three counts, Luther H. Kieffer, a clerk in charge of Contract Station No. 44 of the Kansas City, Missouri, Post Office, was on January 2, 1946, robbed of $129 in his custody, belonging to the United States, by Bent and Jones aided by Thomas Andrew Collins, also named in the indictment as a defendant.[1]

---

[1] The indictment reads as follows:

"Indictment

"In the District Court of the United States of America for the Western District of Missouri, Western Division

"United States of America, Plaintiff,

vs.

"Joseph F. Bent, William Amos Jones and Thomas Andrew Collins, Defendants.

"Title 18, U.S.C., Section 320.

"Count I.

"The grand jury charges:

"On or about the 2nd day of January, 1946, at Kansas City, Missouri, Joseph F. Bent and William Amos Jones did rob Luther H. Kieffer, clerk in charge of Contract Station No. 44 of Kansas City, Missouri Post Office, located at 5744 Prospect, of One Hundred Twenty-nine Dollars ($129.00) in lawful money belonging to the United States, said money being then and there in the custody of the said Luther H. Kieffer;

"On or about the 2nd day of January, 1946, at Kansas City, Missouri, Thomas Andrew Collins did unlawfully aid and abet the said Joseph F. Bent and William Amos Jones in robbing Luther H. Kieffer, clerk in charge of Contract Station No. 44 at Kansas City, Missouri Post Office, located at 5744 Prospect, of the sum of One Hundred Twenty-nine Dollars ($129.00) in lawful money belonging to the United States, said money being then and there in the custody of the said Luther H. Kieffer.

"Count II.

"The grand jury further charges:

"That on or about the 2nd day of January, 1946, at Kansas City, Missouri, Joseph F. Bent and William Amos Jones did, by the use of a dangerous weapon, put in jeopardy the life of Luther H. Kieffer, clerk in charge of Contract Station No. 44 of Kansas City, Missouri Post Office, located at 5744 Prospect;

"On or about the 2nd day of January, 1946, at Kansas City, Missouri, Thomas Andrew Collins did unlawfully aid and abet the said Joseph F. Bent and William Amos Jones in putting in jeopardy the life of Luther H. Kieffer by the use of a dangerous weapon.

"Count III.

"The grand jury further charges:

"That on or about the 2nd day of January, 1946, at Kansas City, Missouri, Joseph F. Bent, William Amos Jones and Thomas Andrew Collins did unlawfully, willfully and feloniously conspire, combine and confederate and agree together to commit an offense against the laws of the United States, the offense being to rob a clerk in charge of a United States Post Office; that is to say, Joseph F. Bent, William Amos Jones and Thomas Andrew Collins did then and there unlawfully, willfully and feloniously conspire, combine, confederate and agree together to rob Luther H. Kieffer who was then and there the clerk in charge of Contract Station No. 44, of Kansas City, Missouri Post Office, and to rob the said Lu-

The first two counts of the indictment were based on § 320, Title 18 U.S.C.A., c. 694, 49 Stat. 867, [now § 2114, new Title 18 U.S.C.A.], which provided that:

"Whoever shall assault any person having lawful charge, control, or custody of any mail matter, with intent to rob, steal, or purloin such mail matter or any part thereof, or shall rob any such person of such mail or any part thereof, shall, for a first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery, he shall wound the person having custody of the mail, or put his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

The first count of the indictment charged the robbery of the custodian. The second count obviously was intended to charge that, in effecting the robbery described in the first count, Bent and Jones put the life of the custodian in jeopardy by the use of a dangerous weapon. The third count was a conventional conspiracy count.

Upon arraignment, the defendants Bent and Jones entered pleas of not guilty. On July 8, 1946, the day set for the trial of their cases, Bent and Jones withdrew their pleas of not guilty, and entered pleas of guilty to counts I and III, reserving their pleas to count II until after the trial of Collins. Collins waived a jury, was tried separately, and acquitted. Thereupon Bent and Jones entered pleas of not guilty to count II (letting their pleas of guilty stand as to counts I and III), waived a jury, went to trial on count II before the court, and were found guilty. The court, on July 10, 1946, sentenced each of them to 25 years imprisonment on count II and to a year and a day on each of counts I and III, the sentences on those counts to run concurrently with the sentence imposed on count II. The sentence of Bent is typical of the sentences of both defendants.[2]

---

ther H. Kieffer of lawful money belonging to the United States, said money being then and there in the custody of the said Luther H. Kieffer and that, in pursuance of said unlawful conspiracy, combination, federation and agreement as aforesaid, and to effect the object and the purpose of the same, did thereafter commit certain overt acts, which said overt acts are specifically as follows:

"1. Joseph F. Bent and William Amos Jones met at the home of Thomas Andrew Collins in Kansas City, Missouri, and made plans to rob the drug store at 5744 Prospect in which is maintained Contract Station No. 44 of Kansas City, Missouri Post Office;

"2. Thereafter, Joseph F. Bent and William Amos Jones did assault by the use of a dangerous weapon, did put in jeopardy his life and did rob Luther H. Kieffer, clerk in charge of Contract Station No. 44, Kansas City, Missouri Post Office of a sum of One Hundred Twenty-nine Dollars ($129.00) in lawful money belonging to the United States, said money being then and there in the custody of the said Luther H. Kieffer;

"3. Joseph F. Bent and William Amos Jones, after the assault and robbery aforesaid, did return to the home of Thomas Andrew Collins and there share with him the money obtained in the robbery of the said Luther H. Kieffer."

[2] "No. 16463 Criminal indictment in three counts for violation of U.S.C., Title 18, Sec. 320.

"On this 10th day of July, 1946, came the United States Attorney, and the defendant Joseph F. Bent appearing in proper person, and by counsel and,

"The defendant having been convicted on finding of guilty by the Court of the offense charged in the indictment in the above-entitled cause, to wit: putting in jeopardy by use of a dangerous weapon the life of a clerk in charge of a post office contract station, charged in count 2; and on plea of guilty heretofore entered of robbing clerk in charge of post office contract station of money belonging to the United States, and conspiring so to rob clerk in charge of post office contract station, charged in counts 1 and 3, and the defendant having been now asked whether he has anything to say why judgment should not be pronounced against him, and no sufficient cause to the contrary being shown or appearing to the Court, It Is by the Court

"Ordered and Adjudged that the defendant, having been found guilty of said offenses, is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for the period of twenty-five (25) years, without costs, on count 2; and for the period of one (1) year and one (1) day,

■ Until Bent filed his motion to correct his sentence, no question had ever been raised as to the sufficiency of the second count of the indictment to charge the armed robbery by Bent and Jones of the custodian, Kieffer. By their pleas of guilty to the first and third counts of the indictment, they, of course, admitted that they had perpetrated the robbery, and by their pleas of not guilty to the second count they denied that in committing the robbery they had put the custodian's life in jeopardy by the use of a dangerous weapon. That raised the only controverted issue of fact. It was tried and resolved against them. The sufficiency of the evidence to sustain the sentences imposed on the second count has never been challenged. It must therefore be assumed by this Court that the guilt of Bent and Jones of the offense defined in § 320 which called for the imposition of a sentence of imprisonment for 25 years was conclusively established. See Hagner v. United States, 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861.

The contentions of the defendants are: (1) that only one punishable offense can arise out of § 320, and, since they pleaded guilty to count I, the court, by the acceptance of their pleas, lost jurisdiction to try them upon their pleas of not guilty to count II; and (2) that the second count is fatally defective in omitting to charge that "in effecting or attempting to effect such robbery" the life of the custodian was put in jeopardy by the use of a dangerous weapon.

■ Whether more than one offense can arise under § 320 in connection with a single armed robbery of one custodian, it is not necessary to consider in this case. But see Blackwood v. United States, 8 Cir., 138 F.2d 461, 462-463; and compare, Costner v. United States, 4 Cir., 139 F.2d 429, 432-433, and Ekberg v. United States, 1 Cir., 167 F.2d 380, 385. A single offense may be pleaded in several counts of an indictment. See Huffman v. United States, 8 Cir., 259 F. 35, 40; Roark v. United States, 8 Cir., 17 F.2d 570, 571, 573, 51 A. L.R. 870. In Dealy v. United States, 152 U.S. 539, 542, 14 S.Ct. 680, 681, 38 L.Ed. 545, the court said:

" * * * It is familiar law that separate counts are united in one indictment, either because entirely separate and distinct offenses are intended to be charged, or because the pleader, having in mind but a single offense, varies the statement in the several counts as to the manner or means of its commission in order to avoid at the trial an acquittal by reason of any unforeseen lack of harmony between the allegations and the proofs. * * * Yet, whatever, the purpose may be, each count is in form a distinct charge of a separate offense, and hence a verdict of guilty or not guilty as to it is not responsive to the charge in any other count."

■ We are satisfied that the pleas of guilty to count I of the indictment, charging the lesser offense of robbery as defined under § 320, did not deprive the court of jurisdiction to try the defendants for the more serious offense, inadequately, but inferentially, stated in the second count of the indictment. The conviction of the greater offense, if legal, supports the entire sentence imposed under all counts.

■ The second count, standing alone, was concededly defective in failing to allege that the defendants, in effecting the robbery charged in the first count, put the life of the custodian in jeopardy by the use of a dangerous weapon. The subject matter of the indictment, however, was the robbery of the custodian, Kieffer, on January 2, 1946, at Kansas City, Missouri. The defendants could have been under no misapprehension about the fact that the government was charging them with the robbery and with having jeopardized the life of the custodian by the use of a dangerous weapon in committing it. There is no suggestion made that the

---

without costs, on each of counts 1 and 3, the sentence imposed on counts 1 and 3 to run concurrently with that imposed on count 2.

"It Is Further Ordered that the Clerk deliver a certified copy of this judgment and commitment to the United States Marshal or other qualified officer and that the same shall serve as the commitment herein.

"J. C. Collet,
"United States District Judge."

defendants were in any way actually misled or prejudiced by the defect in the second count.

In Hagner v. United States, 285 U.S. 427, 431, 432, 433, 52 S.Ct. 417, 420, 76 L.Ed. 861, the Supreme Court,—after pointing out that, in modern practice, formal defects in criminal pleadings, which are not prejudicial, will be disregarded, and that, while an accused must be afforded full protection, the guilty are not to be permitted to escape through mere imperfections of pleading,—said: "Upon a proceeding after verdict at least, no prejudice being shown, it is enough that the necessary facts appear in any form, or by fair construction can be found within the terms of the indictment."

In Hewitt v. United States, 8 Cir., 110 F.2d 1, certiorari denied 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409, this Court dealt with a defective indictment which had been challenged by demurrer. The appeal was from a judgment of conviction. After quoting from the Hagner case, supra, we said, page 6 of 110 F.2d:

"The sufficiency of an indictment should be judged by practical, and not by technical, considerations. It is nothing but the formal charge upon which an accused is brought to trial. An indictment which fairly informs the accused of the charge which he is required to meet and which is sufficiently specific to avoid the danger of his again being prosecuted for the same offense should be held good."

See, also, Hartwell v. United States, 5 Cir., 107 F.2d 359, 362; United States v. Wagoner, 7 Cir., 143 F.2d 1, 2, certiorari denied 323 U.S. 730, 65 S.Ct. 67, 89 L.Ed. 586; Rose v. United States, 9 Cir., 149 F.2d 755, 758.

At the time Bent and Jones were indicted, tried and sentenced, § 556, Title 18 U.S.C.A., c. 31, 48 Stat. 58, provided that "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant. * * *" The substance of this statute, which was repealed, effective September 1, 1948, c. 645, § 21, 62 Stat. 862, has been included in Rule 52(a) of the Rules of Criminal Procedure for the United States District Courts, 18 U.S.C.A., which became effective March 21, 1946. That rule provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

We gather that a court may deal realistically with a problem such as that presented by the motion of Bent in this case, and may follow the dictates of common sense. As a practical matter, the indictment in controversy gave to Bent and Jones all the information they needed and much more than they wanted. They, of course, knew what the indictment meant. They entered pleas of guilty to the first and third counts because they had, in fact, committed the robbery charged against them, had no defense, and could expect some consideration from the court by admitting their guilt of the offenses charged in those counts. Their pleas of not guilty to the second count were, doubtless, induced by the fact that whether they were convicted on that count after trial or on a plea would make no difference, since the court, by virtue of the statute, would, in any event, have to impose a sentence of 25 years imprisonment.

Despite its defects, we think that count II of the indictment was sufficiently informative, when read in the light of the applicable statute to which the indictment referred, the subject matter of the other counts, and the indictment as a whole, to support the sentences imposed upon the defendants. Compare, Johnston v. United States, 9 Cir., 145 F.2d 137, 138, and United States v. Spain, D.C.E.D.Ill., 32 F. Supp. 28, 29-30. The second count should be construed to mean what the defendants, their counsel, and the trial court construed it to mean when Bent and Jones entered their pleas of not guilty, were tried, and were sentenced. There is, we think, no logic or justification in punishing poor, but nonprejudicial, criminal pleading by

releasing a guilty defendant. If Bent and Jones are entitled to any relief, it must come by way of parole or executive clemency.

The order appealed from is reversed, and the. District Court is directed to order the apprehension of the appellees and their restoration to proper custody.